UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Katun Corporation,

        Plaintiff,

           v.

Terence Michael Clarke,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 05-2867 ADM/AJB

_____

Christopher W. Madel, Esq., and Stephen P. Safranski, Esq., Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, MN, argued for and on behalf of Plaintiff.

James G. Bullard, Esq., and Douglas R. Peterson, Esq., Leonard, Street and Deinard, Minneapolis, MN, argued for and on behalf of Defendant.

_____

## I. INTRODUCTION

On March 17, 2006, oral argument before the undersigned United States District Judge was heard on Defendant Terence Michael Clarke's ("Clarke" or "Defendant") Motion to Dismiss [Docket No. 4] and Katun Corporation's ("Katun" or "Plaintiff") Motion for Summary Judgment [Docket No. 7]. In its Complaint [Docket No. 1], Plaintiff alleges Defendant breached a contract between the two parties. For the reasons set forth herein, Defendant's Motion to Dismiss is granted and Plaintiff's Motion for Summary Judgment is denied.

## II. BACKGROUND

The factual underpinnings of this lawsuit are complex.[1] Defendant Clarke is a founder, former President, Chief Executive Officer, and Director of Plaintiff Katun Corporation. Compl.

---

[1] Further background can be found in the numerous criminal actions implicated in this suit, including <u>United States v. Katun Corporation</u>, Crim. No. 04-25 PAM (2004), <u>United States v. Clarke</u>, Crim. No. 03-31 JMR (2003), and <u>United States v. Clarke</u>, Crim. No. 04-18 PAM (2004).

¶ 6. In 1987 and 1992, Xerox Corporation ("Xerox") invested in Katun, acquiring, in total, a 30% ownership share in the company. In April 2000, after an internal investigation, Katun cited Defendant for financial improprieties and removed him as Chief Executive Officer. Defendant maintained his ownership share in the company.

In July 2002, PNA Holdings, Inc. ("PNA") bought a controlling interest in Katun from Defendant and other Katun stockholders. Bartol Decl. [Docket No. 12] ¶ 3. The sale was memorialized in a merger agreement (the "Merger Agreement"). Peterson Aff. [Docket No. 15] Ex. A. Section 11.2 of the Merger Agreement is an indemnification clause indemnifying PNA for potential losses occurring after the closing date of July 5, 2002. It states in part:

> [E]ach Company Stockholder . . . hereby agrees, severally and not jointly, to indemnify, defend, and hold harmless Purchaser and the Surviving Corporation . . . from and against any and all Losses which Purchaser Parties may at any time sustain or incur, through and after the date of the claim of indemnification which are occasioned by caused by or arise out of or relate to:
>
> (a)   the breach of any representation or warranty . . . .

Id. § 11.2(a). Here, the Purchaser is PNA and the Surviving Corporation is Katun. In addition to the indemnification provision, the Merger Agreement also gave Xerox power of attorney to act as the "Stockholder Representative" of the selling shareholders. Id. § 1.1.

PNA made claims under the indemnification provision in both 2003 and 2004. Bartol Decl. Exs. B, C. Using the power of attorney granted to it as the Stockholder Representative, Xerox settled these claims on behalf of the selling shareholders, including Defendant. Id. ¶¶ 8-10. In 2005, an Agreement to Settle Controversy ("Settlement Agreement") was entered into between PNA, Katun, and Xerox on behalf of the selling shareholders. Id. at Ex. D. The Settlement Agreement resolved the claims, which were in excess of $14,000,000, and released

the remaining indemnification claims for the amount of $11,650,000, almost the exact amount of Katun's criminal penalties.  Id. at Ex. D.  Katun then sought indemnification from the selling shareholders, including Defendant, for the amount agreed to in the Settlement Agreement.  Katun now claims Defendant has not paid his *pro rata* portion of this settlement amount, alleged to be $1,731,575.99, and on that basis has initiated this breach of contract lawsuit.  Effectively, Plaintiff is seeking indemnification for its criminal penalties.  As it stated in a demand notice to Defendant, Katun had made "demands in excess of $14 million which included the settlement reached by Katun and the Federal Government of $11 million."  Peterson Aff. Ex. B.

The amount referenced in the Settlement Agreement was derived from a plea agreement Katun entered when it acknowledged its guilt after being indicted on twelve felony counts related to computer fraud and misappropriation of unused customer credit balances.  See United States v. Katun Corporation, Crim. No. 04-25 PAM (2004).  The criminal conduct consisted of three separate schemes, two of which continued well after Defendant's departure from the management of Katun in 2000 and also after the sale of Katun was completed in July 2002.  Katun admitted both to computer fraud to obtain competitive intelligence and misappropriating unused customer credit balances which continued until the spring of 2003.  After pleading guilty to these offenses, Judge Paul Magnuson sentenced Katun to a fine in excess of eleven million dollars and a two-year probation period.  Judge Magnuson directed at the sentencing that "the penalty that's imposed in here is a real penalty.  And should be."  Peterson Aff. Ex. I at 45.

Before Katun's plea agreement and sentence was imposed, Defendant had been indicted for his actions at Katun.  In 2003, Defendant pled guilty to four counts of filing false tax returns, for which he received a two year prison term as well as $2 million in fines, $3 million in

3

restitution, and an IRS civil fraud penalty of $1,066,910.  See United States v. Clarke, Crim. No. 03-31 JMR (2003).  Defendant was later indicted in connection with a scheme to bribe Xerox employees, as well as competitive intelligence gathering.  See United States v. Clarke, Crim. No. 04-18 PAM (2004).   Defendant again pled guilty and was sentenced on April 14, 2004 by Judge Magnuson to $250,000 in fines and $1,000,000 in restitution.  As part of Defendant's plea agreements, he cooperated with the government in securing the indictments charging Katun.

### III. DISCUSSION

**A.    Motion to Dismiss**

Defendant has moved to dismiss under Federal Rule of Civil Procedure 12(b).  It is axiomatic that "[i]n considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences." Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997).  Defendant argues that public policy considerations preclude Plaintiff from seeking indemnification for the criminal fines levied against it, and also that Plaintiff's claims are barred by the doctrine of *in pari delicto*.

Defendant's first argument rests on public policy.  Under Minnesota law, indemnification is not allowed if it results in a violation of public policy.  United States v. J & D Enterprises of Duluth, 955 F. Supp. 1153, 1159 (D. Minn. 1997) ("[I]t is settled Minnesota law that indemnification will not be allowed if its application would violate public policy").  Defendant specifically avers that indemnification is inappropriate where it relieves a criminal defendant of the consequences of its illegal acts.  "'[A]ny agreement which relieves the defendants of the consequences of the violation of the public policy imposed by a [statutory provision] is against public policy' . . . . a contract may not relieve a person from the discharge of an absolute duty

that has been imposed by law for the protection of others." Id., quoting Zerby v. Warren, 210 N.W.2d 58, 64 (Minn. 1973). The J & D court also noted that the policy against indemnifying criminal behavior was strengthened by the general rule under Minnesota law that bars the insurability of punitive damage awards. Id.

Additionally, the Eighth Circuit has held that "It cannot be gainsaid that an agreement to pay the penalty which might be imposed upon one found guilty of violating the law would be tainted with illegality and unenforceable." Sachs v. Commissioner of Internal Revenue, 277 F.2d 879, 883 (8th Cir. 1960). Finally, in Kansas City Operating Corp. v. Durwood, the Eighth Circuit stated:

> Interwoven in plaintiff's argument is the contention that since the indemnity contract is a legal and valid contract facially, its enforcement does not require the court to give force and effect to the furtherance of the [unlawful scheme] . . . . plaintiff overlooks the fact that the loss for which it claims indemnification stemmed directly from the act of fraud and conspiracy.

278 F.2d 354, 361 (8th Cir. 1960). In Durwood, the defendant had agreed to indemnify plaintiff from losses in two lawsuits. However, the loss sustained by plaintiff in those suits was due to the fraud of both plaintiff and defendant. Id. at 356-57. As a result, the indemnification clause was deemed unenforceable.

Here, Defendant argues that Katun is attempting to use the indemnification clause of the Merger Agreement to shift the criminal consequences of its actions to Defendant. Defendant does not deny the existence or validity of the indemnification clause; rather, he argues that the indemnification clause can not be used to protect Katun given its own criminal behavior.

There is no dispute that Katun pled guilty to twelve felony counts of corporate criminal

behavior and was fined for that behavior.[2] However, Katun argues that Defendant forfeited any public policy argument when Xerox entered into the Settlement Agreement on Defendant's behalf. In support of its argument, Katun cites precedent for the general proposition that valid settlement agreements are to be enforced. See Schumann v. Northtown Ins. Agency, Inc., 452 N.W.2d 482, 483 (Minn. Ct. App. 1990). Katun also cites an Eighth Circuit case in which the defendant attempted to avoid the consequences of a settlement agreement because the underlying liability arose from gambling contracts. There, the Eighth Circuit rejected that argument, stating that the defendant was "estopped to plead or prove the defenses set forth in his answer." Hoyt v. Wickham, 25 F.2d 777, 780 (8th Cir. 1928). Although Plaintiff claims Hoyt to be "indistinguishable," Hoyt is factually disparate from the case at bar. In Hoyt, the Eighth Circuit found no evidence to support the allegation that the underlying liability arose from gambling debts. Id. at 781. Therefore, the precedential value of Hoyt in this instance is of limited value.

Katun further avers that even if sound public policy reasons support Defendant's Motion, Defendant must still fulfill his obligations under the indemnification provision because the indemnification provision is facially valid, and the obligations imposed by the indemnification provision were owed to a third party, PNA. Plaintiff cites language from the indemnification provision which recites that the indemnification clause protects PNA and the "Surviving Corporation," which, in this case, is Katun.

Both of Katun's arguments to rebut Defendant's public policy defense are misplaced. Although Katun's general proposition that settlement agreements void certain defenses to

---

[2] Corporations, of course, can not, unlike an individual, be sentenced to confinement. Punishment for corporations is limited to financial penalties.

contracts may be accurate as a general statement of law, it can not trump the public policy argument advanced by Defendant, particularly where Katun's criminal conduct continued long after Defendant was no longer involved in the operations of Katun and the sale of the company was completed. Here, the effect of applying the indemnification clause and the Settlement Agreement is that Katun is insulated from a criminal penalty imposed by the Court after adopting the plea agreement. Minnesota law is clear that one can not insure oneself from criminal penalties. See J & D, 955 F. Supp. at 1153; Durwood, 278 F.2d at 354. The Settlement Agreement, intended to resolve civil liability issues, may not defeat the purpose of the law of criminal responsibility by creating an end around escape from criminal consequences. Although neither party can identify a truly analogous case, the clear weight of the law indicates that courts are loathe to relieve criminal defendants from their punishments. See id. No reason or authority has been presented to indicate that Katun should be immune from this doctrine. On this basis, the Motion to Dismiss is granted.

      Additionally, Katun's argument that the facial validity of the indemnification provision shields it from criminal liability is unavailing. Katun relies on the language of the indemnification provision, which warrants against losses occasioned by misrepresentations. Merger Agreement § 11.2(a). Katun stresses that the indemnification provision does not explicitly cover illegal actions or criminal sanctions by Plaintiff. Therefore, it is argued that the agreement is legal on its face. Additionally, Katun states that, despite language in the indemnification provision stating that the obligation of indemnification is owed to both PNA and the Surviving Corporation, which is Katun, the indemnification provision was actually established to protect PNA, the purchaser. This argument also fails. First, the argument that the

indemnification provision is valid on its face is of no moment. Accepting this contention as true does not change the result here. A contract may be legal on its face, however, it can not be enforced if illegal acts are required to complete performance. Brubaker v. Hi-Banks Resort Corp., 415 N.W.2d 680, 683 (Minn. Ct. App. 1987). In this specific instance, Katun is attempting to enforce the indemnification provision on Defendant to indemnify Katun for its own criminal penalties. This result, as previously discussed, is contrary to public policy and can not occur.

Katun also avers that the inclusion of PNA, an innocent purchaser, in the indemnification provision alleviates any concerns regarding indemnity to Katun. However, PNA is not a party to this suit. Katun is the only named plaintiff, and there is no question that Katun is guilty of the criminal conduct for which it is seeks indemnification. Nor does Plaintiff present authority for the proposition that simply because an innocent third party is a beneficiary of the indemnification agreement, any beneficiary can apply the indemnification provision of the agreement under any circumstances. Whether PNA could validly enforce the indemnification provision under these same circumstances is a question not before the Court at this time, and is irrelevant to this Motion. Defendant's Motion is granted.[3]

---

[3] Defendant also moves to dismiss under the theory of *in pari delicto*, an equitable theory which suggests that courts should not intervene in disputes between parties who are both wrongdoers. "The doctrine of *in pari delicto* applies to parties to an illegal contract." Brubaker, 415 N.W.2d at 683 (citing State by Head v. AAMCO Automatic Transmissions, Inc., 199 N.W.2d 444, 448 (Minn. 1972)). It is not necessary that entering into the contract itself be illegal. See id. ("In AAMCO, it was not illegal in itself to enter into the contract, but the performance of the contract's terms constituted illegal activity.") The Brubaker court also stated that "the application of the doctrine of *in pari delicto* is appropriate for (1) preventing enforcement of a contract the performance of which is illegal; (2) preventing enforcement of an equitable remedy when the parties have been involved in mutually unlawful activity; or (3) use as a defense in a tort claim of one party against another." Id. at 684.

Because Defendant's Motion to Dismiss is granted, the merits of Plaintiff's Motion for Summary Judgment Motion need not be reached, and that Motion is therefore denied.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Terence Michael Clarke's Motion to Dismiss [Docket No. 4] is **GRANTED**; and

2. Plaintiff Katun Corporation's Motion for Summary Judgment [Docket No. 7] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 27, 2006.

---

In the instant action, the indemnification provision itself is not facially illegal, nor does the performance of it necessarily require illegal action. However, there is no question that the claims made under the indemnification provision arise from illegal actions taken by both Plaintiff and Defendant. It is undisputed that Katun's illegal actions continued long after Defendant was removed from management at Katun. Thus, the losses occasioned by the criminal conduct at Katun must be borne by the corporate entity. As a result, the doctrine of *in pari delicto* applies, and Plaintiff is barred from recovery by this defense as well.